IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   10-cv-02391-WYD-MJW

TRAVIS SANSOM,

    Plaintiff,

vs.

KEVIN MILYARD, in his Individual Capacity as Warden;
BEVERLY DOWIS, R.N., in her Individual Capacity as HSA;
DEBRA HEDSTROM, R.N., in her Individual Capacity;
JENNIFER AGUIRRE, R.N., in her Individual Capacity;
GATBEL CHAMJOCK, P.A., in his Individual Capacity;
JOHNNY CRUSSEL, in his Individual Capacity as Case Manager;
C.O. BRADLEY BLAKE, in his Individual Capacity;
SERGEANT VIRGIL NICHOLS, in [his] Individual Capacity;
LIEUTENANT EDWARD LAWSON, in his Individual Capacity;
C.O. JOY TAYLOR (PERRY), in her Individual Capacity;
SERGEANT STEPHEN LADD, in his Individual Capacity; and
LIEUTENANT RONALD GILES, in his Individual Capacity;

    Defendants.

## ORDER

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment (ECF No. 74), filed December 14, 2011 and Plaintiff's Motion for Partial Summary Judgment (ECF No. 77), filed December 15, 2011.   For the following reasons, Defendants' motion is denied in part and granted in part and Plaintiff's motion is denied as set forth below.

I.    INTRODUCTION

This is a prisoner civil rights lawsuit.   Plaintiff Travis Sansom alleges that the Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment.   Plaintiff brings this claim for relief against the Defendants in their individual

capacities pursuant to 42 U.S.C. § 1983.   Plaintiff's claims against Defendants Milyard and Dowis are in their supervisory capacity.

## II.   FACTUAL BACKGROUND

Unless otherwise noted, the following facts are not in material dispute.   During the relevant time period, Plaintiff was an inmate housed at the Sterling Correctional Facility ("SCF") in Sterling, Colorado.   In 2008, Plaintiff was seen and treated by the SCF medical staff for various issues including reported seizures, pneumonia, dental problems and medication management.   From March 27, 2008 to April 2, 2008, Plaintiff was hospitalized for pneumonia.

On December 8, 2008, Lt. Darney Swingle testified that he contacted the SCF medical department and scheduled an appointment for Plaintiff to be seen the following day.[1]   On December 9, 2008, Plaintiff was seen by Defendant Hedstrom, R.N., as an emergency visit.   At the examination, Plaintiff's vital signs were the following: (1) temperature of 98.2; (2) pulse of 111; (3) blood pressure of 86/50; and (4) pulse oxsym of 89.00.   Hedstrom documented Plaintiff's visit in both a Nursing Protocol for Sprains, Strains, Muscle Aches, and in an Ambulatory Health Record.   On the nursing protocol, Hedstrom wrote that on November 30, 2008, Plaintiff began to feel severe pain in his left shoulder after doing pull-up exercises.   Plaintiff testified that he felt a sharp pain (like someone stabbed him in the back with a pen) and heard a pop or cracking sound in his left shoulder when doing pull-ups at the end of November 2008.   Plaintiff further testified

---

[1] Pursuant to Nicole Wilson at the SCF medical department, prior to the situation that led to Plaintiff's hospitalization on December 11, 2008, Plaintiff had not submitted any kites to be seen by medical since February 29, 2008.   Plaintiff was seen on March 24, 2008 with respect to the February 29, 2008 kite. Plaintiff did submit several kites to both have medications refilled and see the dentist.   These kites ended in September 2008.   Plaintiff did not send another kite until December 8, 2008 at which time he stated on the kite, "I have severe pain in my left shoulder blade.   I need an x-ray to see what the problem is."   (Ex. 1).

that he experienced fever, cold sweats, nausea, blurred vision, upset stomach and cramping, back pain, and headache that started almost instantaneously after the pull-up and gradually worsened. Hedstrom presented the Nursing Protocol for Sprains, Strains, Muscle Aches to Defendant Chamjock, P.A. so she could get authorization to dispense pain medication for Plaintiff's shoulder. Chamjock did not evaluate Plaintiff. Plaintiff was given an increased dose of 600mg of Ibuprofen for 7 days.

On the morning of December 10, 2008, Defendant Aguirre, R.N. was asked to see Plaintiff in his cell while she was in the unit doing a medication pass for segregated inmates. On December 11, 2008 in a late written entry, Aguirre recorded the observations she made of Plaintiff's condition on December 10, 2008.[2] Plaintiff and his cellmate, Josh Bono, dispute the accuracy of Aguirre's late, written record. Specifically, Plaintiff disputes that he told Aguirre that his only complaint was that his back and neck hurt or that he agreed to try to go to chow and medline and do some stretching. Plaintiff testified that he told Aguirre that he had intense shoulder pain and wanted her to review his file because he had the same symptoms, if not worse, as he did when he suffered from a prior case of pneumonia. Plaintiff testified that he told Aguirre of extreme pain in his shoulders and back, numbness, intense headache, fever, chills, blurred vision, inability to hold down water, nausea and vomiting. Bono testified that he told Aguirre that Plaintiff was vomiting, not eating or drinking, and unable to leave the tier.

On the morning of December 11, 2008, SCF correctional officer Kathleen Rhoades called for first responders after becoming concerned about Plaintiff's physical condition. Her incident report states:

---

[2] Among other things, Aguirre recorded that Plaintiff was slightly agitated and complained of shoulder and neck pain. Aguirre further recorded that Plaintiff agreed to try to do some stretching and exercise as much as he could tolerate. Aguirre instructed Plaintiff to submit a kite if he was not feeling better in the morning.

-3-

> On December 11, 2008, at approximately 8:10 a.m., I C/O
> Rhoades was in Unit 1 - C Pod when the inmates informed me
> that inmate Sansom #112205 was in bad shape and that
> medical needed to see him.   I went up to C-1-16 where inmate
> Sansom was laying in his bed. I asked him what his name was
> and he was able to give me his name and number.   I asked
> him how he was feeling and he could not answer.   His eyes
> looked glassy, he was hot to the touch, and he was mumbling.
> I called for first responder and a wheelchair.   I saw that
> Sansom was unable to walk so I called for a back-board.
> Sansom was then helped down the stairs by inmate Erben and
> Bono.   He was placed in a wheelchair and taken to medical by
> the nurses.

(Ex. A-8).

Plaintiff was then transported to medical, where vital signs were obtained. Plaintiff's pulse ox saturation rate was 54%, and a Non-Rebreather mask (NRB) on high flow oxygen was placed over his mouth, and a nasogastric tube with suction was placed down his throat to suction bloody fluid from his stomach.   Ambulance records document the onset of Plaintiff's cough to be three days prior per SCF staff, however, a medical record from Denver Health Medical Center documents the onset of Plaintiff's symptoms to be two weeks prior to December 11, 2008.   Plaintiff thought he began vomiting brown liquid on December 8, 2008, although prior to that date, he was having trouble holding down any liquids and is not sure when he started coughing up fluids and/or mucous. Inmate Anthony Shapiro testified that he remembered Plaintiff vomiting on December 6, 2008.   Inmate Bono testified that Plaintiff was coughing on December 8, 2008 and began vomiting a black substance on December 9, 2008.

Plaintiff was transported via ambulance to Sterling Regional Medical Center, where he was assessed, and then transferred to Denver Health, where he was hospitalized until December 29, 2008.   Plaintiff's diagnoses on discharge included

MSSA2 empyema, MSSA bacteremia, and secondary kidney problems, which required dialysis but was thought to be resolving at the time of discharge. (Ex. A-11). Then, Plaintiff was transported from Denver Health to the DOC's Denver Reception and Diagnostic Center, where he remained in the infirmary until approximately April 7, 2009. Plaintiff was then transferred to the Fremont Correctional Facility.

III.    STANDARD OF REVIEW

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A movant who bears the burden at trial must submit evidence to establish the essential elements of its claim or affirmative defense. *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002). In contrast, if the movant "does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotations omitted).

The non-moving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see* Fed. R. Civ. P. 56(e). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715

(10th Cir. 2010).

IV.     ANALYSIS

    A.     Defendants' Motion for Summary Judgment

In their motion for summary judgment, Defendants argue both that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA") and that Plaintiff cannot prevail on his claim for deliberate indifference to a serious medical need.

      1.     Exhaustion Under the PLRA

Defendants move for summary judgment based upon Plaintiff's failure to timely exhaust his administrative remedies, as required by the PLRA. 42 U.S.C. § 1997e(a). Prior to filing this civil action, Plaintiff was required to exhaust available administrative remedies pursuant to the PLRA. *Booth v. Churner*, 532 U.S. 731, 741 (2001). Section 1997e(a) provides: "No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v.* Bock, 549 U.S. 199, 210-12 (2007); *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). However, the burden is not on Plaintiff to sufficiently plead exhaustion or attach exhibits proving exhaustion in his Complaint. *Jones*, 549 U.S. at 215. Rather, the burden is on the Defendants to assert a failure to exhaust in their dispositive motion. As such, if the evidence presented creates a genuine

-6-

issue in Plaintiff's favor, the motion should be denied.

As a preliminary matter, the prison facility is tasked with the responsibility of establishing grievance procedures. *Id.* at 218 ("[I]t is the prison's requirement, not the PLRA, that define the boundaries of proper exhaustion."). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Baldauf v. Garoutte*, No. 03-cv-01104, 2007 WL 2697445, at *4 (D. Colo. Sept. 11, 2007) (citation omitted).

Here, the DOC adopted an Administrative Regulation with respect to inmate grievances.  (*See* AR 850-04, Ex. A-29).   AR 850-04(IV)(D) states that a "Step 1 grievance must be filed no later than 30 calendar days from the date the offender knew, or should have known, of the facts giving rise to the grievance." (Ex. A-29 at 8). On March 3, 2009, Plaintiff submitted a Step 1 grievance after the 30-day time period had elapsed. However, the DOC failed to address the timeliness of the Step 1 grievance, and on April 25, 2009, Defendant Aguirre responded to this grievance on the merits. Then, on May 18, 2009, Plaintiff submitted a Step 2 grievance, which was responded to on July 21, 2009.   On July 21, 2009, Plaintiff submitted a Step 3 grievance, which was responded to by the DOC's Grievance Officer on September 24, 2009.   The Grievance Officer denied Plaintiff's requested relief on the merits.

In the motion, Defendants assert that Plaintiff failed to exhaust his administrative remedies because he submitted his Step 1 grievance outside the 30-day time period. Plaintiff disagrees arguing that the DOC responded to each grievance on the merits and issued a final letter informing Plaintiff that he had exhausted his administrative remedies. In support of his argument, Plaintiff cites *Ross v. County of Bernalillo*, 365 F.3d 1181

(10th Cir. 2004). Relevant to this matter, the *Ross* Court held that "[i]f a prison accepts a belated filing and considers it on the merits, that step makes the filing proper for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court." *Id.* at 1186.[3]

Here, the DOC clearly did not reject Plaintiff's Step 1 grievance for untimeliness. Further, not only did the DOC respond to Plaintiff's Step 1 grievance on the merits, it responded to both his Step 2 and Step 3 grievances on the merits. Finally, the DOC issued Plaintiff a final letter informing Plaintiff that he had exhausted his administrative remedies. Accordingly, having established that the DOC responded to his Step 1 grievance on the merits, I find that Plaintiff has responded in a way that raises a genuine dispute regarding his failure to exhaust. *See id.* Accordingly, Defendant's motion with respect to the exhaustion of administrative remedies is denied.

        2.     <u>Eighth Amendment Claim</u>

The Eighth Amendment protects against the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. The Eighth Amendment's prohibition against cruel and unusual punishment encompasses deliberate indifference by prison officials. *Howard v. Waide*, 534 F.3d 1227, 1235 (10th Cir.2008) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or

---

[3] In the alternative, Plaintiff asserts that due to his medical condition, he was unable to physically submit the Step 1 grievance on time. However, having found Plaintiff raised a genuine issue of fact with respect to his first contention, I need not address this argument.

delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05 (internal citation omitted).

The elementary principles of dignity, civility, humanity, and decency "establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical torture or a lingering death, the evils of most immediate concern to the drafters of the [Eighth] Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose." *Id.* at 103 (internal quotation and citation omitted).

An Eighth Amendment claim for deliberate indifference involves "a two-pronged inquiry, comprised of an objective component and a subjective component." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). With respect to the objective component, a medical need is serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (internal quotation and citation omitted). The question is not limited to whether the inmate's symptoms render a medical need sufficiently serious, but also extends to whether the potential harm to the inmate is sufficiently serious. *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005).

Under the subjective component, the defendant must have a "sufficiently culpable

state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citation omitted); *see also Self*, 439 F.3d at 1230–31. In other words, the plaintiff must establish that the defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (internal citation and quotation omitted).

Unlike the objective component, the symptoms displayed by the prisoner are relevant to the subjective component of deliberate indifference. *Mata*, 427 F.3d at 753. With regard to the subjective component, the question for consideration by the Court is: "were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?" *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009) (quoting *Mata*, 427 F.3d at 753). "A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of her condition. Even a brief delay may be unconstitutional." *Mata*, 427 F.3d at 755; *see also Dougherty v. Kansas*, No. 08–3066, 2008 WL 2906505, at *3 (D. Kan. July 24, 2008) (unpublished) ("a delay in providing medical care does not violate the Eighth Amendment unless the plaintiff has suffered 'substantial harm' from the delay"; lifelong handicap, permanent loss, or considerable pain amounts to substantial harm). "[P]rison officials who 'actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Howard v. Waide*, 534 F.3d 1227, 1239 (10th Cir. 2008) (quoting *Farmer*, 511 U.S. at 844–45). "An official responds to a known risk in an objectively unreasonable manner if he knew of ways to reduce the harm but knowingly or recklessly declined to act." *Howard*, 534 F.3d at 1239–40 (internal citation and

modification omitted).

### a. Deliberate Indifference of Medical Personnel and Corrections Officers

Here, the Defendants do not contest, for the purposes of summary judgment, that Plaintiff may be able to establish that he suffered from a serious medical condition. However, Defendants argue that Plaintiff cannot show that they were deliberately indifferent to any medical need.

As to the medical personnel Defendants, there is conflicting evidence that Defendants Hedstrom, Chamjock, and Aguirre knew that Plaintiff's condition was more serious than just a muscle sprain or pull.   On or about December 9, 2008, Plaintiff exhibited abnormal vital signs and was hypotensive and tachycardic.   Plaintiff also states that he complained of extreme pain, nausea and vomiting.   Given Plaintiff's medical history, which included a recent hospitalization for pneumonia, this evidence raises the question of whether Hedstrom, Chamjock or Aguirre should have immediately referred Plaintiff to a physician for diagnosis and treatment.   After reviewing the conflicting evidence, I find that there is a genuine dispute as to Hedstrom, Chamjock, and Aguirre's knowledge of Plaintiff's symptoms, the nature of Plaintiff's symptoms, the veracity of Plaintiff's complaints during both Hedstrom's examination and Aguirre's visit to Plaintiff's cell, and the level of pain and suffering experienced by Plaintiff.

As to the corrections officer Defendants, there is also conflicting evidence precluding summary judgment as this time.   Plaintiff, along with his girlfriend and other inmates, repeatedly notified the corrections officers about Plaintiff's worsening condition (extreme pain, nausea, vomiting, inability to get out of bed, and inability to eat) and requests for immediate medical treatment.   Plaintiff and other inmates also state that

-11-

corrections officers personally observed Plaintiff's condition and obvious need for immediate medical care. On the other hand, the officers have stated that they did not observe Plaintiff to be in need of immediate medical attention or at a substantial risk for a serious medical problem. Accordingly, I find that there are genuine issues of material fact as to whether Defendants Blake, Taylor, Ladd, Giles, Nichols, Lawson, and Crussell were deliberately indifferent to Plaintiff's serious medical need.

Accordingly, in these circumstances, summary disposition of Plaintiff's Eighth Amendment claim against Defendants Hedstrom, Chamjock, Aguirre, Blake, Taylor, Ladd, Giles, Nichols, Lawson, and Crussell is inappropriate at this time and will be denied.

b.   Deliberate Indifference of Supervisors - Defendants Milyard and Dowis

In 2008, it is undisputed that Milyard was the Warden at SCF and Dowis was the Health Services Administrator at SCF.

The Tenth Circuit has long held that a government official cannot be liable under a theory of respondeat superior. *Gagan v. Norton*, 35 F.3d 1473, 1476 n. 4 (10th Cir. 1994). However, in a decision interpreting *Iqbal*, the Tenth Circuit noted that the Supreme Court narrowed the scope of supervisory liability under § 1983. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). Thus, after *Iqbal*, the *Dodds* Court instructed that a supervisor can be held liable under § 1983 only if "(1) [he] promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* at 1199.

In order for Plaintiff to establish an Eighth Amendment claim against Milyard and Dowis, he must show an "affirmative link between the supervisor and the violation,

-12-

namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates." *Serna v. Colo. Dept. of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006). Under § 1983, a plaintiff may impose liability upon a defendant supervisor "who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which subjects, or causes to be subjected that plaintiff to the deprivation of any rights . . . secured by the Constitution . . . ." *Dodds*, 614 F.3d at 1198 (internal quotations omitted).

Here, Plaintiff alleges that Dowis enacted and implemented an unconstitutional policy at SCF where: (1) inmates who are attempting to access medical care for potentially life-threatening conditions are denied access based on a telephone conversation between SCF non-medical staff and a nurse; (2) it is acceptable for non-medical staff to offer medical opinions on the inmate's condition; and (3) it is acceptable to evaluate patients without taking vital signs or, at the very least, performing a visual assessment.

Plaintiff further alleges that Milyard approved and implemented an unconstitutional policy that allowed nurses to decide whether to evaluate prisoners for potentially life-threatening conditions through a telephone conversation with corrections officers. The officers were then allowed to communicate this information to the medical staff if the officers believed the prisoner should be evaluated, causing a delay in Plaintiff's access to medical care.

After carefully reviewing the proffered evidence, I find that Plaintiff failed to offer any evidence to create a genuine issue of material fact regarding both Dowis and

Milyard's liability.  Nothing in the record indicates deliberate indifference on the part of these Defendants.  Plaintiff's mere identification of Dowis as the "Hospital Administrator" and Milyard as the "Warden" is insufficient to show an affirmative link between the alleged constitutional violation and/or the Defendants' personal participation.  While Plaintiff argues that Dowis and Milyard had the ultimate responsibility for all decisions to provide medical care at SCF or failed to supervise/train their employees, the evidence fails to support this argument.  Plaintiff also argues that both Dowis and Milyard approved or implemented unconstitutional policies and then failed to intervene in the medical decisions of other correctional employees.  Again, nothing in the record indicates that Dowis or Milyard had the authority to act as Plaintiff claims they should have or personally participated in the denial of appropriate medical care.  Dowis and Milyard both testified that they lacked authority to control the actions of the medical staff or the medical decisions made while on duty during the relevant time in question with respect to the Plaintiff.  Accordingly, I find that summary judgment is properly entered in favor of both Dowis and Milyard on Plaintiff's Eighth Amendment claim.

       3.    <u>Qualified Immunity</u>

Defendants argue that they are entitled to the defense of qualified immunity. Qualified immunity, in certain circumstances, protects government officials from litigation when they are sued in their individual capacities.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 814-18 (1982).  "[G]overnment officials . . . generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Id.* at 818. When the defense of qualified immunity is raised, the Court must consider whether

Plaintiff's factual allegations demonstrate that Defendants violated a constitutional right and whether that constitutional right was clearly established at the time of the alleged violation.  *See Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (denoting two-part inquiry); *see also Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808, 818 (holding that district court may consider the two-parts of the necessary inquiry in any order deemed appropriate) (2009).  "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity."  *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citing *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995)).

As discussed above, I find that there are genuine issues of material fact as to Plaintiff's Eighth Amendment claims against Defendants Hedstrom, Chamjock, Aguirre, Blake, Taylor, Ladd, Giles, Nichols, Lawson, and Crussell for deliberate indifference. Thus, I now consider whether these Defendants are entitled to qualified immunity. Because Plaintiff has come forth with genuine issues of fact that these Defendants violated his constitutional rights, the remaining consideration is whether the rights at issue were "clearly established when the alleged violation occurred."  *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 841 (10th Cir. 2005) (citation omitted).

I find that Plaintiff's claims—that Defendants Hedstrom, Chamjock, Aguirre, Blake, Taylor, Ladd, Giles, Nichols, Lawson, and Crussell violated his Eighth Amendment right to appropriate medical care—allege violations of clearly established law.  *See generally Bennington*, 2009 WL 798861, at *9 (D. Colo. March 24. 2009) (denying qualified immunity on motion to dismiss for claim of denial of pain medication); *Martin v. Sherrod*, No. 06-cv-00625-WDM-CBS, 2007 WL 1832036 (D. Colo. June 25, 2007) (citing *Estelle v. Gamble*, 429 U.S. at 97) (denying qualified immunity for Eighth Amendment violation

for denial of medications and treatment, among other allegations, because constitutional right clearly established); *Freeman v. Knight*, No. 04-cv-00148-MSK-PAC, 2005 WL 1896245, at *5 (D. Colo. Aug.8, 2005) (noting that the court "need not conduct an expansive review of authority to recognize that the Eighth Amendment long-ago established that a prison official's seizure of items necessary for a medically-approved treatment without regard to the inmate's health is prohibited"). Accordingly, at this stage of the litigation, I find that Defendants Hedstrom, Chamjock, Aguirre, Blake, Taylor, Ladd, Giles, Nichols, Lawson, and Crussell are not entitled to qualified immunity as to the Eighth Amendment claims made against them.

However, as to Defendants Dowis and Milyard, because I find that Plaintiff failed to create a genuine issue of material fact as to the Eight Amendment violations alleged against them, they are entitled to qualified immunity as to those claims.

    B.    <u>Plaintiff's Partial Motion for Summary Judgment</u>

In his motion for summary judgment, Plaintiff moves for partial summary judgment on Defendants' affirmative defenses: 2, 5, 6, 7, 8, 9, 11, 12, and 18. In response, Defendants concede that affirmative defenses 5, 7, 11, and 12 were dismissed by the Court on February 2, 2011 and do not intend to assert such defenses. Defendants further state that they withdraw affirmative defense 2 (comparative or contributory negligence). Accordingly, Plaintiff's motion is denied as moot with respect to affirmative defenses: 2, 5, 7, 11, and 12.

        1.    <u>Affirmative Defense 6 – Failure to Mitigate Damages</u>

Plaintiff argues that a failure to mitigate damages affirmative defense is not available under a § 1983 claim. After carefully reviewing the evidence before me, I find

that it is premature to issue such a ruling at this stage of the litigation. Should relevant evidence supporting such an affirmative defense be presented at trial, Plaintiff may re-raise this issue at an appropriate time. Thus, Plaintiff's motion is denied without prejudice with respect to affirmative defense 6.

        2.     <u>Affirmative Defense 8 – Reduction of Damages for Collateral Sources and Affirmative Defense 9 – Application of Punitive or Exemplary Damages</u>

Plaintiff claims that Defendants may not assert the affirmative defense for reduction of damages based on collateral sources pursuant to Colo. Rev. Stat. § 13-21-111.6 or the affirmative defense that Plaintiff's claims for punitive or exemplary damages are barred by Colo. Rev. Stat. § 13-21-102. Again, I defer any ruling on these issues until trial. The parties have not offered any evidence with respect to these issues in connection with the summary judgment briefing, thus, until I hear relevant evidence at trial with respect to damages, any ruling is premature at this time. Thus, Plaintiff's motion is denied without prejudice with respect to affirmative defenses 8 and 9.

        3.     <u>Affirmative Defense 18 – Failure to Exhaust Administrative Remedies</u>

As I previously held in this Order, I find genuine issues of material fact as to whether Plaintiff exhausted his administrative remedies. Accordingly, this issue will proceed to trial. Plaintiff's motion is denied with respect to affirmative defense 18.

V.    <u>CONCLUSION</u>

Based on the foregoing, it is

ORDERED that Defendants' Motion for Summary Judgment (ECF No. 74) is **GRANTED IN PART AND DENIED IN PART.** The motion is granted with respect to the claims asserted against Defendants Milyard and Dowis. The motion is denied in all other

respects. It is

FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment (ECF No. 77) is **DENIED** as follows:

- The motion is **DENIED AS MOOT** as to affirmative defenses: 2, 5, 7, 11, and 12.

- The motion is **DENIED WITHOUT PREJUDICE** as to affirmative defenses: 6, 8, and 9.

- The motion is **DENIED** as to affirmative defense 18.

Dated: March 23, 2012

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge